STATE OF MAINE

CUMBERLAND, ss.

SUPERIOR COURT
CRIMINAL ACTION
Docket No. CR-08-781

STATE OF MAINE,

v.                                                   DECISION

JEREMY BUCKLEY,

        Defendant.

## FINDINGS

1. Det. Sgt. Daniel Down and Sgt. Michael Hayes received complaints of sexual abuse involving defendant Jeremy Buckley.

2. After some investigation the two officers went to Mr. Buckley's home in Hollis to question him.

3. They knocked on the door three times and received no answer. They called Mr. Buckley's cell phone three times and Mr. Buckley answered on the third try.

4. The two officers had arrived in an unmarked car. Both wore civilian clothes. There were no other officers nearby.

5. The officers told Mr. Buckley they wished to speak to him and he agreed. The officers asked him if he was alone. Although Mr. Buckley had a woman friend in a different part of the house, he said he was alone.

6. The officers and Mr. Buckley sat down at the dining room table. There was open access from two sides of the table to the outside.

7. Sgt. Down told Mr. Buckley at the outset that he was not under arrest and if at any time he should feel uncomfortable, he should let them know. The officers did not read Mr. Buckley his Miranda rights. Nor did they tell him he could ask

them to leave at any time. Nor did they tell him he could stop talking at any time.

8. The officers asked Mr. Buckley if he knew why they were there. He mentioned something about a mortgage. They told him that they had received complaints from two "provocative" young girls and asked if he knew who they were. Mr. Buckley named the two complaining witnesses. Asked how he would know that, Mr. Buckley responded that rumors were going around.

9. Mr. Buckley at first denied any sexual contact with the girls but about 22 or so minutes into the 40-minute interview, he began admitting various types of sexual contact.

10. Det. Down did most of the questioning. He was not accusatory and did not bully Mr. Buckley. He was always low key and calm. For the most part he used the traditional interrogation techniques of empathy and understanding. He emphasized his role as a fact finder and told Mr. Buckley that there were two sides to every story.

11. The detectives never lied to Mr. Buckley. Sgt. Down did suggest to Mr. Buckley, shortly before Mr. Buckley began making admissions, that there might be evidence on security cameras and text messages. Sgt. Down did not state as a fact that there was such evidence. Instead he asked Mr. Buckley what he thought security cameras would show.

12. Mr. Buckley sounded a bit nervous at times but he, too, was calm and coherent. He never cried or sobbed. He gave no indication of being intimidated. For at least 20 minutes, he denied sexual contact.

13. Mr. Buckley was placed under arrest after making incriminating statements. He was later Mirandized and interrogated again after being taken into custody.

## DISCUSSION

Looking at the objective factors as outlined in *Michaud*, I find by the appropriate standard of proof that there is no evidence that Mr. Buckley believed he was in police custody during the first interview or believed he was constrained to a degree associated with formal arrest. Nor would a reasonable person in Mr. Buckley's circumstances believe so.

The clerk will make the following entry on the docket by reference.

Defendant Jeremy Buckley's motion to suppress is denied in all respects. This case will be placed on the next available docket call.

DATED:     August 22, 2008

Atty: Paradie

DA: Ellis

_____
William S. Brodrick
Justice, Superior Court
Active-Retired

A True Copy
Attest: *Sally A. Bouget*
Clerk of Courts

3